```
          IN THE UNITED STATES DISTRICT COURT
       FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
```

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:20CR350-1 |
| | ) | |
| ROBERT KESHAUN TURNER | ) | |

### MEMORANDUM OPINION AND ORDER

THOMAS D. SCHROEDER, Chief District Judge.

Before the court is the motion of Defendant Robert Keshaun Turner to suppress all evidence seized, including a Ruger .45 caliber handgun and magazine, as a result of a warrantless search of a black Buick automobile he occupied (as the driver) parked at 702 North Alston Avenue in Durham, North Carolina, on June 4, 2020. (Doc. 11.) The Government has filed a response in opposition (Doc. 12), and Turner has replied (Doc. 14). An evidentiary hearing was held on June 8, 2021. For the reasons set forth below, the motion will be denied.

I.  BACKGROUND

The Government presented the testimony of Officer David Flores, a three-year veteran of the Durham Police Department. The court finds his testimony credible, particularly as it was corroborated by his body-camera audio-video of the encounter, which the Government introduced and which was viewed in open court. Based on the complete record, the court finds the following facts by a preponderance of the evidence.

On June 1, 2020, at approximately 6:30 p.m., Flores responded to a report by Calvin Fearington of a larceny at a boarding house located at 1515 Liberty Street. Fearington told Flores that his brother, Robert Keshaun Turner, stole his firearm, a .45 caliber black and gray SR Ruger, from a lock box located in Fearington's bedroom. Fearington provided Flores with the serial number for the firearm. According to Fearington, Turner was the only person who knew where the firearm was located within the bedroom. Fearington also informed Flores that Turner was involved with the Folk Nation street gang and that the gang was in conflict with another gang, possibly the Bloods.

After taking Fearington's report, Flores entered the firearm as stolen in the National Crime Information Center database. Flores then presented evidence to a magistrate in Durham County who issued a warrant for Turner's arrest. In the process, Flores learned that Turner was a felon and a validated gang member.

The next day, June 2, 2020, at approximately 11:30 p.m., Flores responded to a report of a carjacking at 302 Raynor Street. The victim, Israel Beairs, informed Flores that he had been parked and waiting to meet with a friend, known as "Uncle," to have his car fixed. While waiting, Beairs was approached by Uncle's nephew, whom Israel identified as Defendant Turner. After making conversation with Beairs, Turner allegedly pulled out a gun – which Beairs described as a black and gray Ruger .45 – and told Beairs

2

to get out of the vehicle. Beairs reported that Turner then entered the vehicle and drove away. After Flores took Beairs's report, but prior to leaving, Beairs called Turner in an attempt to have his vehicle returned. Turner told Beairs that he needed "to make money" and hung up. Flores subsequently went to the magistrate's office to apply for an arrest warrant. While en route, however, an officer called Flores and informed him that Uncle had convinced Turner to return Beairs's vehicle. Ultimately, the magistrate declined to issue an arrest warrant and instead informed Flores that the matter required further investigation.

Less than 27 hours later, on June 4, 2020, at approximately 2:00 a.m., Flores responded to a "sound of shots" call at the EZ Mini Mart located at 702 North Alston Drive. Flores was familiar with the area and had previously responded to calls relating to disturbances in that area, including other "sound of shots" calls, reports of heavy gambling, and gang activity. By the time Flores arrived on the scene, other Durham Police officers were already present.

In responding to the call, Flores parked on the side of the street, without blocking in any vehicles, and walked toward the front of the EZ Mini Mart. His activities were recorded by his body-worn camera. As Flores approached the store's parking lot, he spotted Turner in the driver's seat of a parked Buick SUV; a minor passenger occupied the SUV's backseat. As Flores reached

3

the vehicle, Turner rolled down his window and Flores asked him his identity, which Turner confirmed.  Flores then asked Turner to exit the vehicle, placed him under arrest for larceny of Fearington's firearm, and frisked him.  Both Turner and the minor were detained, and Turner was placed in the backseat of Flores's police vehicle.

Flores returned to the parking lot and approached the SUV to conduct a search.  At that time, Durham Police Corporal Peterson – Flores's immediate supervisor – was already in the process of searching the SUV.  Shortly thereafter, Peterson discovered a firearm in the glove compartment of the vehicle.  Flores checked the serial number of the firearm in his police database and confirmed that it was the same black and grey Ruger .45 firearm that Fearington reported stolen on the evening of June 1.

Turner is presently charged with being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) and possession of a stolen firearm in violation of 18 U.S.C. §§ 922(j) and 924(a)(2).  (Doc. 4.)  He now moves under the Fourth Amendment to exclude all evidence seized in the warrantless search of the Buick SUV on June 4, 2020.  Turner contends that Flores lacked a "reasonable basis" to search the vehicle incident to his arrest.  (Doc. 11 at 6-7.)  The Government responds that, based on the totality of the circumstances known to Flores at the time of the arrest, he had not only a reasonable basis, but probable cause

4

to search the vehicle for evidence relating to Turner's larceny of a firearm arrest and thus the search was justified both as a search incident to arrest and under the automobile exception to the Fourth Amendment. (Doc. 12 at 6-8.) In response, Turner argues that the search was not permissible under the automobile exception because Flores did not have probable cause and the vehicle was not "readily mobile." (Doc. 14 at 1.)

## II. ANALYSIS

The Fourth Amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures." U.S. CONST. amend. IV. Evidence obtained in violation of the Fourth Amendment is subject to the exclusionary rule, which dictates that such evidence "cannot be used in a criminal proceeding against the victim of the illegal search and seizure." United States v. Calandra, 414 U.S. 338, 347 (1974). Warrantless searches "are *per se* unreasonable under the Fourth Amendment — subject to only a few specifically established and well-delineated exceptions." Katz v. United States, 389 U.S. 347, 357 (1967). Accordingly, where the Government seeks to introduce evidence obtained through a warrantless search, it must prove by a preponderance of the evidence that the warrantless search was justified under one of those exceptions. See Coolidge v. New Hampshire, 403 U.S. 443, 455 (1971) (government bears burden to show legality of warrantless

5

search); United States v. Matlock, 415 U.S. 164, 177 n.14 (1974) (burden of proof applicable to a motion to suppress is preponderance of the evidence).

"[A] search incident to a lawful arrest is a traditional exception to the warrant requirement of the Fourth Amendment." United States v. Robinson, 414 U.S. 218, 224 (1973). In the context of a vehicle search, the Supreme Court has held that a warrantless search of a vehicle may be conducted incident to the arrest of a recent occupant where "it is reasonable to believe the vehicle contains evidence of the crime of arrest." Arizona v. Gant, 556 U.S. 332, 351 (2009).[1] Although the Fourth Circuit has not definitively articulated what "reasonable to believe" means under the Gant exception in the vehicle context, existing cases indicate that it is a less demanding standard than probable cause.[2]

---

[1] Gant also provides that police may search a vehicle incident to arrest where "the arrestee is within reaching distance of the passenger compartment at the time of the search." Id. The parties do not contend that this exception is implicated here.

[2] Both the Government and Turner conflate the "reasonable to believe" standard under Gant with probable cause to some extent. (See Doc. 12 at 7 n.6; Doc. 11 at 7.) The Government notes United States v. Brinkley, where the Fourth Circuit expressly equated "reasonable to believe" with probable cause in the context of serving an arrest warrant within a home. See 980 F.3d 377, 385-86 (4th Cir. 2020). However, neither Brinkley nor the cases cited within it discuss vehicle searches under Gant. Rather, Brinkley addressed circumstances in which law enforcement may warrantlessly enter a home to execute an arrest and held that "reasonable belief in the Payton [v. New York, 445 U.S. 573 (1980)] context embodies the same standard of reasonableness inherent in probable cause." Id. (emphasis added) (internal quotation marks omitted) (quoting United States v. Vasquez-Algarin, 821 F.3d 467, 477 (3d Cir. 2016)). The higher standard applied in that context is based on the understanding that

6

See United States v. Baker, 719 F.3d 313, 319 (4th Cir. 2013) ("[I]n contrast to Gant's rule, [the automobile] exception permits police officers to search a vehicle for evidence of any crime, not just the crime of arrest, but only on a showing of probable cause rather than a mere reasonable belief."); see also United States v. Vinton, 594 F.3d 14, 25 (D.C. Cir. 2010) ("Presumably, the 'reasonable to believe' standard requires less than probable cause . . . ."); United States v. Rodgers, 656 F.3d 1023, 1028 n.5

---

private dwellings are "afforded the most stringent Fourth Amendment protection." Id. at 383 (quoting United States v. Martinez-Fuerte, 428 U.S. 543, 561 (1976)). However, it does not follow that the formulation of "reasonable to believe" in Brinkley applies equally in the context of vehicle searches pursuant to Gant, and no court appears to have extended the holding of Brinkley (or the cases cited within it) to the context of vehicle searches under Gant. Vehicles have a "lesser expectation of privacy" than one's home, United States v. Kelly, 592 F.3d 586, 590 (4th Cir. 2010) (citing South Dakota v. Opperman, 428 U.S. 364, 367 (1976)), and the exception articulated in Gant derives from circumstances "unique to the vehicle context," Gant, 556 U.S. at 343. The Gant court expressly distinguished the exception articulated – which allows officers to search vehicles for evidence of the crime of the arrest based on a reasonable belief – with the automobile exception – which allows officer to search vehicles for evidence of any crime but must be supported by probable cause. See id. at 346-47. The Court would have little reason to have done so had the two standards been redundant. The Fourth Circuit has also contrasted probable cause with a "mere" reasonable belief in the context of Gant. See United States v. Baker, 719 F.3d 313, 319 (4th Cir. 2013) (noting that, "in contrast to Gant's rule, [the automobile] exception permits police officers to search a vehicle for evidence of any crime, not just the crime of arrest, but only on a showing of probable cause rather than a mere reasonable belief" (emphasis added)); see also United States v. Davis, 997 F.3d 191, 201-02 (4th Cir. 2021) (considering the "reasonable to believe" standard of Gant after having found that the automobile exception's probable cause standard was not met). Given this context, the court does not read "reasonable to believe" to mean probable cause in the Gant context. See also Brinkley, 980 F.3d at 395 (Richardson, J. dissenting) (explaining that not every use of "reasonable to believe" or "reasonable belief" by the Supreme Court invokes probable cause, citing Terry v. Ohio, 392 U.S. 1 (1968) and Maryland v. Buie, 494 U.S. 325 (1990)).

7

(9th Cir. 2011) (noting that the Gant standard "appears to require a level of suspicion less than probable cause"); United States v. Edwards, 769 F.3d 509, 514 (7th Cir. 2014) (indicating that reasonable belief "may be a less demanding standard" than probable cause).

A second exception, the automobile exception, permits a warrantless search of a vehicle where it "'is readily mobile and probable cause exists to believe it contains contraband' or evidence of criminal activity." Baker, 719 F.3d at 319 (quoting Pennsylvania v. Labron, 518 U.S. 938, 940 (1996)). The automobile exception requires that a vehicle be "readily mobile" only "in the sense that it is 'being used on the highways' or is 'readily capable of such use' rather than, say, 'elevated on blocks.'" United States v. Kelly, 592 F.3d 586, 591 (4th Cir. 2010) (quoting California v. Carney, 471 U.S. 386, 392-93, 394 n.3 (1985)). Probable cause "plainly 'exist[s] where the known facts and circumstances are sufficient to warrant a [person] of reasonable prudence in the belief that contraband or evidence of a crime will be found.'" United States v. Allen, 631 F.3d 164, 172 (4th Cir. 2011) (quoting Ornelas v. United States, 517 U.S. 690, 696 (1996)).

Here, Turner first argues that the search of the SUV was not justified as a search incident to arrest because Flores did not have a reasonable basis to believe that evidence of the crime of arrest — larceny of a firearm — would be found in the vehicle.

8

(Doc. 11 at 6-7.) In making this argument, Turner appears to equate "reasonable basis" with probable cause. In response, the Government argues that Flores not only had a reasonable basis to believe evidence of the crime would be found in the vehicle, but that he had probable cause to search the vehicle for evidence. (Doc. 12 at 6-8.)

Several courts have found that law enforcement will typically have a reasonable basis to believe that evidence of the crime of arrest will be found in a vehicle where the crime is weapons-related. For example, in United States v. Vinton, the D.C. Circuit held that an arrest for the unlawful possession of a weapon "makes it reasonable to believe" that "additional weapons are in the car" because "the defendant has been caught with a type of contraband sufficiently small to be hidden throughout a car and frequently possessed in multiple quantities." See 594 F.3d at 25-26; see also United States v. Wade, No. CRIM.A. 09-462, 2010 WL 1254263, at *5 (E.D. Pa. Mar. 29, 2010) ("After officer Spain arrested Wade for possession of a firearm, it was reasonable for him to believe that he might find contraband — such as another gun, ammunition, or drugs — in Wade's jacket" located within the vehicle). Similarly, the Fourth Circuit indicated there was a reasonable basis to believe that evidence of the crime of arrest would be found in a vehicle, such that the search was permitted incident to arrest, where a defendant was arrested for use of a firearm in the

9

commission of a felony and officers suspected he had a gun on the day of arrest, explaining that "the offense of arrest . . . suppl[ied] a basis for searching . . . [the] vehicle." United States v. Laws, 746 F. App'x 187, 189 (4th Cir. 2018) (quoting Gant, 556 U.S. at 344) (some alterations in original).  In determining whether officers had a reasonable belief or probable cause to search a vehicle, courts have further considered the active warrants of the vehicle's occupants, see United States v. Wright, No. 5:18-CR-00005-6, 2018 WL 5046091, at *8 (W.D. Va. Oct. 17, 2018), if the vehicle was located in a high crime area, United States v. Muti, No. 4:09-CR-41-FL1, 2009 WL 3296091, at *3 (E.D.N.C. Oct. 13, 2009), and the time of day, United States v. Skoda, 705 F.3d 834, 838 (8th Cir. 2013).

At the time of Turner's arrest, Flores had significant knowledge of Turner's activity and circumstances over the preceding 56 hours that justified the warrantless search.  On June 1, 2020, Flores personally took the report of Fearington who indicated that Turner both had stolen his firearm and was involved in a street gang that was possibly in conflict with another such gang.  Less than 30 hours later, Flores personally responded to a carjacking call where the victim both identified Turner as the assailant and indicated that Turner brandished a firearm matching the description of that stolen from Fearington.  And less than 27 hours after that, Flores responded — again personally — to a shots-

10

fired call in an area which he knew to be affiliated with gang activity at a late hour of night, where he encountered Turner. At that time, Turner confirmed his identity and Flores arrested him on his outstanding warrant for larceny of a firearm. Based on the crime of arrest, coupled with the surrounding circumstances of which Flores was aware, he had at least a reasonable belief that Turner's vehicle contained evidence of the larceny of the firearm, such that the search of the vehicle incident to arrest was permissible. The court need not, therefore, reach Turner's alternate argument that Flores lacked probable cause to search the SUV under the automobile exception.[3]

Finally, Turner argued, orally before the court, that Corporal Peterson — who discovered the stolen firearm in Turner's vehicle — did not have a reasonable belief sufficient to search Turner's vehicle because he did not have knowledge of the same

---

[3] It is plain, however, that to the extent Turner argues that the search was not permissible under the automobile exception because the vehicle was not "readily mobile," that argument fails. Turner suggests that the vehicle was not readily mobile because there was no licensed individual available to move the vehicle once Turner was arrested. (Doc. 14 at 1-2.) However, the crux of the readily mobile inquiry is the vehicle is readily capable of being moved, "rather than, say, elevated on blocks." Kelly, 592 F.3d at 591 (internal quotation marks omitted). The Fourth Circuit has expressly declined to "carve out exceptions to the automobile exception based on the degree of control police exercise over a vehicle." Id. As indicated by Flores's testimony, following Turner's arrest, his vehicle was ultimately moved by a licensed individual who came to the scene. His vehicle was therefore clearly capable of being moved and, despite the fact that the vehicle was under a degree of police control following Turner's arrest, was "readily mobile."

11

facts known to Flores. In response, the Government argued that the gun inevitably would have been discovered by Flores during his lawful search of the vehicle.[4]

The Government is correct. The firearm discovered by Peterson does not need to be suppressed as it inevitably would have been discovered by Flores during his own lawful search of the vehicle. The inevitable discovery exception dictates that the government may use "information obtained from an otherwise unreasonable search if it can establish by a preponderance of the evidence that law enforcement would have 'ultimately or inevitably' discovered the evidence by 'lawful means.'" United States v. Bullette, 854 F.3d 261, 265 (4th Cir. 2017) (quoting Nix v. Williams, 467 U.S. 431, 444 (1984)). "'Lawful means' include an inevitable search falling within an exception to the warrant requirement." Id. (quoting United States v. Allen, 159 F.3d 832, 841 (4th Cir. 1998)).

---

[4] The Government did not argue that the searching officers, namely Corporal Peterson, had sufficient collective knowledge to justify the search. The Fourth Circuit permits officers lacking personal knowledge sufficient to justify a search to rely upon the collective knowledge doctrine, applicable "where the search . . . is directed by an officer who himself has sufficient knowledge" to justify the search. See United States v. Ferebee, 957 F.3d 406, 411 (4th Cir. 2020). As discussed above, Flores had a reasonable basis to search the vehicle. However, it is unclear whether Peterson – who began searching the vehicle prior to Flores and ultimately discovered the firearm - began his search of the vehicle at Flores's direction or whether he otherwise had knowledge of the events leading to Turner's arrest, such that he also had a reasonable basis to search the vehicle. As such, the court cannot determine that Peterson's search of the vehicle was either independently lawful or permissible under the collective knowledge doctrine.

Officer Flores's warrantless search of the vehicle, as discussed above, was permissible as a search incident to arrest under Gant.  As demonstrated by Flores's testimony and his body camera footage from the night of the arrest, Flores was beginning to search Turner's vehicle when shortly thereafter Peterson discovered the firearm in the vehicle's glove compartment.  Had Flores searched the entire vehicle without Peterson's assistance, Flores inevitably would have checked the glove compartment and discovered the firearm himself.  Therefore, the inevitable discovery doctrine applies to the discovery of the firearm, and the fact that Peterson actually discovered its presence does not invalidate the search.

### III. CONCLUSION

For the reasons stated,

IT IS THEREFORE ORDERED that Defendant's motion to suppress (Doc. 11) is DENIED.

/s/   Thomas D. Schroeder
United States District Judge

June 15, 2021

13

Case 1:20-cr-00350-UA   Document 16   Filed 06/15/21   Page 13 of 13